(No. 35436.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS JEFFERSON, Plaintiff in Error.

*Opinion filed March 23, 1962.—Rehearing denied May 17, 1962.*

WILLIAM W. BRACKETT, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant was tried by jury in the criminal court of Cook County and convicted of the crime of armed robbery. He filed a petition under the Post-Conviction Hearing Act, which was denied without a hearing. The case is now before us upon a writ of error to review the judgment of conviction and also upon a petition for a writ of error under the Post-Conviction Hearing Act. The causes have been consolidated here.

The defendant's principal contention is that the evidence failed to establish his guilt beyond a reasonable doubt. The defendant was charged with armed robbery of a car-rental

agency. Robert Birmingham, the manager of the agency, testified that three armed men entered his office. One of the men, who wore a mask, forced Birmingham to give him money from the cash register and asked him to open the safe. Birmingham testified that one of the other robbers, referred to in the record as "the second man" went into an adjoining office where one Eddie Taylor was working and forced Taylor to go to the main office. This man then forced Birmingham to surrender his ring, watch and money. Birmingham testified that about a week later he went to the police station where he viewed two men who had been apprehended by the police. Although the defendant was one of the two men, Birmingham was unable to identify either of them as one of the robbers.

Taylor testified that the second man forced him into the main office and forced Birmingham to surrender his money, watch and ring. Taylor testified that he identified the defendant at the police station as the man who had taken Birmingham's watch, ring and money. Taylor also identified the defendant in court.

Jose Suarez testified that at the time of the robbery, he was in the office and took a good look at the second man. He testified that he identified the defendant at the police station and he also identified the defendant at the time of the trial. It was brought out that Suarez did not point out the defendant at the police station, because Taylor had already pointed him out. After Taylor had made his identification, the police officers asked Suarez if that was the man and Suarez replied that it was.

A police officer, Frank Novak, testified that sometime after the robbery, he went to an apartment which was rented by one Hurley Murphy. He had a search warrant but the record does not disclose the property described in the warrant. Novak and several other officers commenced a search of the apartment and shortly thereafter the defendant entered the room. He was searched and then taken to the

kitchen where he was directed to remain. Sometime thereafter, Novak found a ring lying on top of a towel on a radiator near where the defendant had been seated in the kitchen. The officer could not remember whether the towel and the ring had been there before the defendant arrived. The officer took the ring back to the station because, as he said, a college class ring seemed out of place in the surroundings. When he checked the robbery reports, he found that the ring matched the description of the ring taken from Birmingham. He then called Birmingham, who came to the station and identified the ring, but did not identfy the defendant.

For the defense, the defendant's aunt testified that he was home in bed with a bad cold all during the time of the robbery. She testified that she could remember this particular day because she and some friends were having a party downstairs and she had to come upstairs occasionally to get refreshments for the party. Every time she came upstairs, she looked in on the defendant and saw that he was still in bed.

Enoch Scott also testified for the defense. He testified that at the time of the trial he was confined in the county jail under several indictments charging him with robbery and murder. He testified that he and two other men had committed the armed robbery of the car-rental agency and testified that he was the one who had taken Birmingham's property. He testified that the defendant was not involved in the robbery. Scott gave a detailed account of the robbery, describing the car-rental office with considerable accuracy. He also identified Taylor, who was still present in court, although Scott had not been present in the court room at the time Taylor had testified. It was brought out that Scott had previously been in two mental institutions.

In rebuttal, Taylor and Suarez testified that Scott was not the person who took Birmingham's money, watch and ring.

It is our function on review to carefully examine the evidence in a criminal case, giving due consideration to the fact that the court and jury saw and heard the witnesses. If, after such consideration, we are of the opinion that the evidence is not sufficient to establish defendant's guilt beyond a reasonable doubt, it is our duty to reverse the judgment of conviction. (*People* v. *Coulson,* 13 Ill.2d 290.) Here the man whose money, watch and ring were taken was unable to identify the defendant as the person who had taken them in spite of the fact that he had equal, if not better, opportunity to observe this person as the other witnesses. The identification testimony by Taylor and Suarez, while evidence of the defendant's guilt, is somewhat weakened by the fact that only two men were exhibited to them at the police station and is also weakened by the fact that Suarez only confirmed Taylor's identification instead of making an individual identification. The fact that Birmingham's ring was found in Murphy's apartment after the defendant came in, on a radiator near where the defendant was seated, is insufficient to show that the defendant had even been in possession of the ring. In fact, both in the trial court and in this court, the State has disclaimed any intention to raise such an inference and states that the ring was merely a strong factor to be considered in linking the defendant with the crime, whether he put the ring on the radiator or not. We are unable to agree. If the presence of the ring in the apartment raised no inference that the defendant put it there, it is no evidence against the defendant.

Opposed to the State's evidence, there is the uncontradicted alibi testimony and the testimony of Scott that he was the man who took Birmingham's ring and that the defendant was not involved in the robbery. The evidence in this case is not such as to create an abiding conviction of the defendant's guilt and the judgment of conviction must be reversed. The case will not be remanded for a new trial since all of the witnesses who could testifiy, have already

testified. We find it unnecessary to consider the other assignments of error and also find it unnecessary to consider whether the trial court should have afforded the defendant a hearing on his post-conviction petition.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*